UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**KEITH BREWER**                                  **CIVIL ACTION**

**versus**                                        **NO. 12-2814**

**N. BURL CAIN, WARDEN**                          **SECTION: "B"(3)**

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Keith Brewer, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. On January 24, 2007, he was convicted of aggravated burglary

under Louisiana law.[1] On June 8, 2007, he was found to be a fourth offender and was sentenced as such to a term of fifty years imprisonment.[2] On December 30, 2008, the Louisiana Fourth Circuit Court of Appeal affirmed his conviction and habitual offender adjudication; however, the court vacated his sentence and remanded the matter for resentencing.[3] The Louisiana Supreme Court then denied his related writ application on October 30, 2009.[4]

On April 23, 2010, the state district court resentenced petitioner as an habitual offender to a term of life imprisonment without benefit of probation, parole, or suspension of sentence.[5]

---

[1] State Rec., Vol. VII of VII, transcript of January 24, 2007, p. 105; State Rec., Vol. I of VII, minute entry dated January 24, 2007.

[2] State Rec., Vol. II of VII, transcript of June 8, 2007; State Rec., Vol. I of VII, minute entry dated June 8, 2007.

[3] State v. Brewer, 2 So.3d 1150 (La. App. 4th Cir. 2008); State Rec., Vol. II of VII.

[4] State v. Brewer, 21 So.3d 271 (La. 2009); State Rec. Vol. IV of VII.

[5] State Rec., Vol. I of VII, minute entry dated April 23, 2010.

On January 12, 2011, petitioner filed an application for post-conviction relief with the state district court.[6] That court denied relief on June 22, 2011.[7]

While that application was pending, petitioner also filed a motion to quash with the state district court on February 8, 2011.[8] On March 14, 2011, the state district court denied that motion.[9] His related writ applications were then likewise denied by the Louisiana Fourth Circuit Court of Appeal on May 13, 2011,[10] and by the Louisiana Supreme Court on September 14, 2012.[11]

---

[6] That application does not appear in the state court record submitted to this Court; however, petitioner has attached a copy of the application to his federal petition. Rec. Doc. 1, pp. 39-50. As to the date of filing, the United States Fifth Circuit Court of Appeals has held that federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana prisoner's *pro se* state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006). That date cannot be gleaned with certainty with respect to this filing; however, petitioner alleges that the application was filed on January 12, 2011. See Rec. Doc. 1, pp. 3, 25, and 33. For the purposes of this decision, the undersigned has accepted that allegation as true.

[7] Rec. Doc. 1, p. 51.

[8] That motion also does not appear in the state court record submitted to this Court; however, again, petitioner has attached a copy of the motion to his federal application. Rec. Doc. 1, pp. 19-20.

[9] State Rec., Vol. V of VII, Judgment dated March 14, 2011.

[10] State v. Brewer, No. 2011-K-0477 (La. App. 4th Cir. May 13, 2011); State Rec., Vol. V of VII.

[11] State *ex rel.* Brewer v. State, 97 So.3d 1010 (La. 2012); State Rec., Vol. VI of VII.

In November of 2012, petitioner filed the instant federal application seeking *habeas corpus* relief.[12] The state argues that petitioner's federal application is untimely.[13] The state is correct.[14]

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his underlying criminal judgment became "final."[15] On that point, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003). However, "[i]f the defendant stops the appeal process before that point," ... "the conviction becomes final when the time for seeking further direct review in the state court expires." Id. at 694; see also Foreman v. Dretke, 383 F.3d 336, 338 (5th Cir. 2004) (Section 2244(d)(1)(A) gives alternative routes for finalizing a conviction: either direct review is completed or the time to pursue direct review expires).

---

[12]  Rec. Doc. 1.

[13]  Rec. Doc. 13.

[14]  Because petitioner's federal application is in fact untimely, the Court need not, and does not, address the state's alternative arguments.

[15]  Although 28 U.S.C. § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are not applicable in the instant case.

> Although federal, not state, law determines when a judgment is final for federal habeas purposes, a necessary part of the finality inquiry is determining whether the petitioner is still able to seek further direct review. See Foreman, 383 F.3d at 338-39. As a result, this court looks to state law in determining how long a prisoner has to file a direct appeal. See Causey v. Cain, 450 F.3d 601, 606 (5th Cir. 2006); Roberts, 319 F.3d at 693.

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).

However, under the AEDPA, a state criminal judgment is not final until *both* the petitioner's conviction *and* sentence are final. See Burton v. Stewart, 549 U.S. 147, 156-57 (2007); Scott v. Hubert, 635 F.3d 659, 665-67 (5th Cir. 2011). As noted, after petitioner's original sentence was vacated on direct appeal, he was resentenced by the state district court on April 23, 2010.[16] Therefore, his state criminal judgment became final on May 24, 2010, when his period expired for seeking direct review of that resentencing. See La. Code Crim. P. art. 914(B)(1) ("The motion for an appeal must be made no later than ... [t]hirty days after the rendition of the judgment or ruling from which the appeal is taken.").[17] Accordingly, his federal limitations period commenced on that date and then expired one year later, unless that period was extended by tolling.

The AEDPA expressly provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). After two hundred thirty-two (232) days elapsed, petitioner tolled the federal

---

[16] State Rec., Vol. I of VII, minute entry dated April 23, 2010.

[17] Because the thirtieth day of that period here fell on a Sunday, petitioner had until the following Monday, May 24, 2010, to move to appeal. See La. Code Crim. P. art. 13; La. Rev. Stat. Ann. § 1:55.

limitations period by filing his post-conviction application with the state district court on January 12, 2011.[18] That application was denied on June 22, 2011.[19] Under Louisiana law, he then had thirty days to seek review by the Louisiana Fourth Circuit Court of Appeal. Louisiana Uniform Rules of the Courts of Appeal Rule 4-3. When he failed to file a writ application with that court, statutory tolling ceased, and the federal limitations period resumed running, on July 22, 2011. See Melancon v. Kaylo, 259 F.3d 401, 406-07 (5th Cir. 2001); Singleton v. Tanner, Civ. Action No. 09-1631, 2009 WL 2184641, at *3 (E.D. La. July 17, 2009).

The critical issue concerning the timeliness of the instant federal application is whether the filing the motion to quash[20] with the state district court extended tolling beyond July 22, 2011. For the following reasons, the undersigned finds that it did not.

That motion to quash was filed on February 8, 2011, and any tolling resulting from the motion continued only so long as the motion remained pending. It is clear that a post-conviction filing remains pending during any supervisory review of that motion, *but only if petitioner sought supervisory review in a timely manner.* See Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-71 (5th Cir. 2004). Here, the state correctly argues that petitioner's Louisiana Supreme Court writ application concerning the motion to quash was untimely filed, and, therefore, tolling resulting from the motion to quash ceased when his period expired for seeking review of the Louisiana Fourth Circuit Court of Appeal's judgment of May 13, 2011.

---

[18] Rec. Doc. 1, pp. 39-50.

[19] Rec. Doc. 1, p. 51.

[20] Rec. Doc. 1, pp. 19-20.

Of course, it is true that petitioner filed a motion for an extension of time to file a writ application with the Louisiana Supreme Court.[21] However, in response to that filing for an extension of time, the Central Staff of the Louisiana Supreme Court sent petitioner a letter stating:

> Your request for an extension of time has been filed and given the above number. You should send your application as soon as you are able, preferably within 60 days from the date of this letter. Your application will be filed as a supplement to the filing under the above number. *The filing of your request for an extension and any supplemental application does not represent a finding by this Court that your filings are or are not timely.*[22]

Even if that letter is interpreted as an indication that the Louisiana Supreme Court was treating the motion for an extension as the equivalent of a writ application (which could then later be supplemented as explained in the letter), that interpretation does not ultimately aid petitioner, because the motion for an extension was itself untimely, having been filed *after* petitioner's deadline for seeking review by the Louisiana Supreme Court had already expired. As noted, the Court of Appeal issued its judgment on May 13, 2011,[23] and notice of that judgment was mailed to the parties that same date.[24] He then had only thirty days to seek review of that judgment by the Louisiana Supreme Court. Louisiana Supreme Court Rule X, § 5(a). Therefore, his deadline

---

[21] State Rec., Vol. VI of VII.

[22] State Rec., Vol. VI of VII, Letter to petitioner from Central Staff dated June 30, 2011 (emphasis added).

[23] State v. Brewer, No. 2011-K-0477 (La. App. 4th Cir. May 13, 2011); State Rec., Vol. V of VII.

[24] State Rec., Vol. VI of VII, Notice of Judgment and Certificate of Mailing.

for seeking review expired on June 13, 2011.[25] However, his motion for an extension was filed no earlier than June 22, 2011,[26] more than a week too late.

If petitioner is perhaps contending that the lateness of that filing was excused by the Louisiana Supreme Court due to the extenuating circumstances explained in his motion, that contention is seemingly foreclosed by federal precedent. When the Louisiana Supreme Court acted on petitioner's writ application, it simply issued an one-word judgment: "Denied."[27] In Butler v. Cain, 533 F.3d 314 (5th Cir. 2008), a case interpreting the meaning of a similar one-word denial issued by the Louisiana Supreme Court with respect to an untimely writ application, the United States Fifth Circuit Court of Appeals held that the presumption is that such a one-word judgment is a decision denying the writ as *untimely*, not a decision on the merits. The Fifth Circuit reasoned:

> The Louisiana Supreme Court's 1999 order contains only one word: "denied." See State v. Butler, 734 So.2d 1222. Butler argues that a simple "denied" cannot be based on untimeliness, relying in part on our statement in 2004 that "when the denial of an application is based on untimeliness, Louisiana courts routinely and unmistakably indicate so in their opinions." Grillette v. Warden, 372 F.3d 765, 775 (5th Cir. 2004). In Grillette, though, we were evaluating solely the practice of the Louisiana Court of Appeal under a rule applicable only to it and not to the state's Supreme Court; we

---

[25] Again, because the thirtieth day, June 12, 2011, fell on a Sunday, the period for seeking review was extended through the following Monday, June 13, 2011. See La. Code Crim. P. art. 13; La. Rev. Stat. Ann. § 1:55.

[26] It cannot be determined when petitioner placed this filing in the prison mail system; however, he signed the certificate of service on June 22, 2011, and so it could not have been placed in the mail system any earlier than that date. It is further noted that the envelope in which the motion was mailed was metered on June 24, 2011, and the motion was received by the Louisiana Supreme Court on June 27, 2011.

[27] State *ex rel.* Brewer v. State, 97 So.3d 1010 (La. 2012); State Rec., Vol. VI of VII.

cited only intermediate court opinions for our conclusion. See id. at 769-70. Conversely, in a pre-Grillette opinion, we found that a single-word denial order from the Louisiana Supreme Court likely indicated untimeliness and not a merits decision. Williams v. Cain, 217 F.3d 303, 304, 309 n.7 (5th Cir. 2000).

Butler also refers to numerous Louisiana Supreme Court orders which specifically stated that the application was "not considered, not timely filed." See, e.g., State v. Baker, 939 So.2d 1269 (La. 2006); State v. Shannon, 766 So.2d 1261 (La. 2000); State v. Jones, 763 So.2d 586 (La. 2000). However, those examples do not prove the negative, that the absence of such language when Butler's application was denied means that the merits were reached.[FN2]

> [FN2] A 2006 decision from this court cited Grillette and applied its disposition-on-the-merits assumption to a Louisiana Supreme Court "denial" order. Causey, 450 F.3d at 606-07. The assumption in Causey was more warranted than it is here. There was good reason to believe that Causey's direct review application was actually timely and should have been considered on the merits. Id. at 602. This court's assumption that it was heard on the merits was therefore fully justified. In contrast, Butler concedes that his direct review application was untimely filed. Though Causey applied Grillette's assumption to the same order language that is at issue here, a case that predates Causey did not do so. Williams, 217 F.3d at 309 n. 7.

Most persuasive to us, the Louisiana Supreme Court would have violated its own rule if it had considered Butler's petition on the merits. A Louisiana Supreme Court rule requires that an "application seeking to review a judgment of the court of appeals," must be filed within thirty days; it specifies that "[n]o extension of time therefor will be granted." La. Sup. Ct. R. X, § 5(a). While another section of the Rule – Section 5(b) – allows the Supreme Court to extend the time for filings under the subsection "upon proper showing," that applies to narrow categories of applications that do not include cases such as Butler's.[FN3]

> [FN3] Section 5(b) describes the types of applications to which it applies: "When an

> application is sought to review the action or inaction of a trial court in (a) a case in which the court of appeal does not have supervisory jurisdiction, i.e., a criminal case in which a death sentence has been imposed or in which a conviction and sentence were imposed before July 1, 1982, or (b) a case in which the court of appeal has supervisory jurisdiction but the applicant seeks to file an application directly or simultaneously in this court (which application will not ordinarily be considered by this court absent extraordinary circumstances)...."
>
> One of our opinions dealt with an extension and does not indicate that it was granted pursuant to Section 5(b). Hughes v. Cain, 249 Fed.A ppx. 340, 341 (5th Cir. 2007) (unpublished). The record in that case reveals that Hughes had filed one of the types of applications to which Rule 5(b) applies. See Appellee's Resp. to Court Order, No. 06-30561, docket entry of 2/12/07 at 2-3. The Appellee's response makes clear that the "routine[ ]" granting of extensions to which the opinion refers occurs "where simultaneous filings have been made with the Supreme Court and a Court of Appeal" – a filing under Section 5(b), not 5(a). Id. at 3.
>
> Finally, there is no indication that the state court granted an extension or otherwise waived its own rule as to Butler. Butler did not even request an extension of time to file his late direct review application. He has not claimed that he received a letter from that court allowing a late filing such as did the defendant in Hill v. Cooper, 2007 WL 458207, No. 04-2588 (E.D. La. 2007). We are not aware of any case in which the Louisiana Supreme Court *sua sponte* extended the amount of time in which to file under Rule X, § 5(a). Contra Hughes, 249 Fed. Appx. at 341 (Hughes requested and received an extension under § 5(b)); McGee v. Cain, 104 Fed. Appx. 989 (5th Cir. 2004) (unpublished) (requested and did not receive an extension under § 5(a)); Hill, 2007 WL 458207 at *2 (requested and did receive an extension – unclear what basis).
>
> We conclude that the Louisiana Supreme Court found Butler's application for further review of his conviction to be untimely.

Butler, 533 F.3d at 318-19.

The Court finds that the Butler presumption is applicable in this case. Although, unlike in Butler, petitioner did in fact file a motion for an extension, that motion was filed *after* the deadline had *already expired*. Moreover, as noted, the Central Staff's letter responding to the extension request expressly informed him: "The filing of your request for an extension and any supplemental application does not represent a finding by this Court that your filings are or are not timely."[28] Under these facts, and in light of the Louisiana Supreme Court's own rule that no extensions of the thirty-day deadline will be granted, there is no reasonable basis for finding the Butler presumption inapplicable; therefore, the undersigned concludes that the Louisiana Supreme Court's decision should be interpreted as one denying the writ application as untimely rather than on the merits.

In light of the foregoing, and because the United States Supreme Court has expressly held that *no* statutory tolling whatsoever is available for an untimely filing in state court, Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005),[29] the undersigned finds that statutory tolling ceased with respect to the motion to quash on June 13, 2011, when petitioner's time expired for seeking timely review by the Louisiana Supreme Court of the Court of Appeal's denial of May 13, 2011.

---

[28] State Rec., Vol. VI of VII, Letter to petitioner from Central Staff dated June 30, 2011.

[29] In Pace, the United States Supreme Court held: "When a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)." Pace, 544 U.S. at 414. Moreover, it has repeatedly been held that "a federal habeas petitioner receives no tolling credit whatsoever for an untimely Louisiana Supreme Court writ application." Falkins v. Cain, Civ. Action No. 11-668, 2011 WL 3899096 (E.D. La. Aug. 16, 2011), adopted, 2011 WL 3898058 (E.D. La. Sept. 6, 2011).

However, the federal limitations period did not in fact resume running at that point because it was still tolled due to the continuing pendency of the post-conviction application filed on January 12, 2011. As already explained, that application remained pending for AEDPA purposes until July 22, 2011, when petitioner's deadline expired for seeking further review of that application by the Louisiana Fourth Circuit Court of Appeal.

Therefore, the undersigned finds that all statutory tolling based on the foregoing state court filings ceased no later than July 22, 2011. At that point, for the reasons previously explained, two hundred thirty-two (232) days of petitioner's federal limitations period had already elapsed, leaving only one hundred thirty-three (133) days remaining. Accordingly, he had only until December 2, 2011, to file his federal application, unless the limitations period was again tolled.

Clearly, petitioner is not entitled to further statutory tolling under § 2244(d)(2), in that he had no other "application[s] for State post-conviction or other collateral review" pending prior to that deadline.

The Court must next consider equitable tolling. The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 645 (2010). However, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 649 (internal quotation marks omitted); see also Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances"). Petitioner bears the burden of proof to establish entitlement to equitable tolling. Alexander v. Cockrell, 294

F.3d 626, 629 (5th Cir. 2002). In the instant case, he has brought forth no evidence demonstrating that he is entitled to such tolling, and this Court knows of no reason that would support equitable tolling of the statute of limitations.

The Court also notes that the United States Supreme Court recently held: "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ... or, as in this case, expiration of the statute of limitations." McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013). Here, however, petitioner does not argue that he is actually innocent of the crime of which he stands convicted, much less submit any evidence to make a colorable showing of such innocence.

Because petitioner is not entitled to further statutory tolling, and because he has not established that he is eligible for equitable tolling or that the McQuiggin "actual innocence" exception applies, his federal application for *habeas corpus* relief had to be filed no later than December 2, 2011, in order to be timely. His federal application was not filed until November of 2012,[30] and, therefore, it is untimely.

### RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Keith Brewer be **DISMISSED WITH PREJUDICE** as untimely.

---

[30] "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003). While that date cannot be gleaned with certainty from the record, the petition was received for filing by this Court on November 13, 2012, almost an entire year after AEDPA's limitations period expired.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[31]

New Orleans, Louisiana, this twenty-third day of June, 2014.

*[signature: Daniel E. Knowles, III]*

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[31] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.